Good morning, Your Honors. Philip Bronson, representing Tony Lawrence Thompson, a state prisoner, convicted of robbery for taking some cases of baby formula, and was granted a certificate on the issue of ineffective assistance of counsel. Here, defense counsel violated the rule that even when there is no theory of defense available, counsel must still hold the prosecution to its heavy burden of proof beyond a reasonable doubt. Counsel here did the opposite. He essentially conceded reasonable doubt in his closing argument so that the trial lost its character as a confrontation between. He did. He did. He did sort of dispute whether she was in fear. She was threatened. She, the manager. All right. He. He. His. He said he just stood there. You know, she didn't run away. And these were just a couple of cases of baby food that belonged to her boss. And she didn't run away. The trial was violation and most of all, I felt very menaced. Yes. But in contrast to that, he was essentially, and he's repeated a number times, saying that the defendant has essentially testified to the robbery. For example, he said, yes, most likely, yes, most likely it is, it does, we all did it because he got up there and testified. And then he said, well, Some of this is fairly confusing because there was a petty theft charge and a robbery charge, and he doesn't distinguish, as he's arguing, between them at all. With respect to the petty theft charge, it's absolutely clear that he was guilty and that he did hang himself, not hang himself, but he did agree and understand that he was guilty. So in that context, many of the statements are completely accurate and unavoidable. He might have been more clear about what the distinction, but certainly insofar as the statements that are being made are that he was guilty of something and that he so admitted, that's true, and there was nothing he could do about that. That's true, but nevertheless, on the robbery charge, those statements that conceded reasonable doubt were not appropriate where the defendant had testified that he didn't swing at the manager who was trying to get back the baby formula. He just pushed the cart and had What if we looked at this case not as a chronic case, but as a Strickland case? Excuse me? As a Strickland case rather than as a chronic case. I'm having some trouble with it as a chronic case, but I'm wondering why — I mean, there was a dispute, clearly, a factual disagreement about the use of force, which was critical to the robbery, between the store manager and him. And this lawyer gets up and says, with regard to that, that the manager didn't lie. Leave everything else out. The manager didn't lie. If the manager didn't lie, then that resolves that dispute. And why, even though he may have quite sensibly made a decision to try to make a whole set of fairly subtle jury nullification arguments as the most likely way to succeed, there was no reason that I can think of why he had in that factual dispute to agree that she told the truth about it. So why can't we just look at this as a Strickland case? Why do we have to go through the chronic, you know, no adversarial testing? I mean, he was making an attempt. He was trying to do something. He, you know, may have done it very badly, but why do we need to look at it that way? Well, if it's a chronic, are you talking about chronic? Yes. I'm trying to understand why we need to – why we couldn't simply look at this in terms of the fact that this was ineffective assistance of counsel in conceding away the only – this critical factual dispute, and that it was harmful, sufficiently harmful under Strickland, and we don't need to get into this no harm – this chronic issue. Well, by getting into chronic, we get into the issue of prejudice. Exactly. That's what I'm asking you. That's what Judge Bresson said. She said, why couldn't you just say it's Strickland? And given the fact that you had these two stories, saying the manager's story is correct, it's truthful, why isn't that prejudicial? Because otherwise, you had just a question of who you want to believe, an emotional manager who's upset, or this man who's stealing the baby formula. And maybe the jury would have believed him, that it's prejudicial. Well, it's possible the jury might have believed him about the issue of force or fear. Exactly. That's the question. So the answer to Judge Bresson's question from you is, yes, you could look at it. Either under Strickland or chronic. That's what you intended to say, right? Yes. Yes, because – But the reason you didn't is because you know that gets you into all sorts of other difficulties, like prejudice, where in chronic, you don't have to show prejudice. You'd have to – under Strickland, you have to show that had he made the argument, this would have changed the outcome, and we know there was another witness. Well, that's why I was arguing that – There was a witness. It wasn't just a credibility contest between your client and the manager. There was another store employee who said, yes, he did hit her. He did. Menace, all right? And then we'd have to wonder whether, if you're going under Strickland, whether if you just argued that that was an effective assistance, would it make any difference at all? Hard to say that it would have. But I don't see how it hurts the argument, the appellate argument, by arguing both Strickland and chronic. Right. You have nothing to lose. But twice instead of once. That's the worst that could happen to you. But there's nothing to lose by arguing – All right. But I'd like to hear the argument. And what is the argument, then, if we're going to look at a Strickland prejudice about why there was sufficient reasonable probability of prejudice as a result of what the choices that the lawyer here made? I mean, he could have gotten up there and said, there's a factual dispute. Mr. So-and-so says this, and they say that, and these are the reasons why you should believe Mr. So-and-so. But anyway, and then all the other stuff he did, which was an attempt to shore up against the fact that they might not believe it. But why – what is the reason why an effective lawyer would get up there and, for the most part, concede the factual dispute so that they – the only way they could rule in his client's favor was really blatant jury nullification rather than convincing themselves that there was at least some reasonable doubt, even if they shaved it. I mean, that really was the choice, right? It was to eliminate any – anything that wasn't direct jury nullification or at least to give them something to hang their hat on if they decided they really wanted this guy to win because he was only stealing baby formula. Well, arguing jury nullification, as I pointed out in the brief, there was no instructions on which the jury could find necessity or self-defense or jury nullification. He was arguing a theory that was contrary to the law. I understand that. But if, for example, the client had gotten up and said, indeed I did smack her in the face, presumably he would have still had to do something and he would have done this. But he didn't do that. No, he didn't. He got up and testified that he didn't use force. And by conceding reasonable doubt, he undercut whatever defense was left. But the problem with trying to put this into a chronic, like, no harm, no adversarial testing is that the lawyer wasn't doing nothing. He was – I mean, he was trying to do something that he thought was helpful. It may not have made much sense, but it wasn't nothing. That's the problem. Well, I still think that even though he was trying, the path that he took was – there was no path at all. I mean, he essentially withdrew an adversarial – That's not quite right. What he's doing is he's establishing a relationship with the jury by saying, look, I was here, you were here, I'm not going to try to fool you. You had two witnesses that said that he did this. And, you know, you probably ought to believe the firm, because I was here, you were here, she looked perfectly credible. But what you can do is you can use your common sense, you can use your sense of justice, you can return a verdict. You can find a way to return a not guilty verdict. There was no way. I – you know, we're all the same. I'm not going to pull the wool over your eyes and try to tell you you shouldn't believe this woman, because I can tell that she was credible. Yeah, I was here, you were here, we all saw her. She looked perfectly credible. But you can – you can nevertheless do justice by voting to up court. Use your common sense, use your sense of justice. It's a perfectly straightforward juridimplication argument. It tells the jurors what they already know perfectly well, that if they come back with a not guilty verdict, there's no force in the universe that can undo that. And that's what he was trying to do. And it failed, but I can't say that – I can't say that it was foolish. I don't know. It doesn't look to me foolish in what was a very bad situation, what was a very bad situation for your client. But while he did that, at the same time, he was conceding reasonable doubt. He was conceding guilt. His statements essentially said we, the defense, have established the robbery for you. He was there. He probably knew that's what happened. Kennedy. Well, he still – to establish jury nullification, he did not have to make all of these concessions of guilt. Well, but he's asking the jury essentially to do something lawless. He's asking the jurors to defy the court and use their sense of justice. And to do that, you have to establish some sort of rapport with the jury. You can't very well in one breath say, you know, we were all here and I want you to find that this woman was lying. And everybody in the court will realize that she's not lying. She's telling the truth. You know that happens with witnesses. Everybody knows that the witness is not lying. And then turn around and ask them to do something that is unlawful and probably somewhat unethical. You know, you could say, look, I was here, you were here, we realize where we are at. What it gets down to is your sense of justice and your willingness, your willingness not to send this man to prison, even though you might think he's guilty because he was trying to feed his baby. On the other hand, it only took one juror to have hung the case. To have hung the case, one juror to have believed. Don't you have to give the jury at least a pretense of an excuse so that they don't have to admit that they're lawless? Don't you have to say to them there is an issue on which you can base something? Or should you say to them, look, I know all I'm asking you to do is violate the law. I know that he's guilty. He is guilty. Now disregard the law. Or would you say, here's what you can hang it on. But what you really have to do is do justice. Would one be incompetent and the other not? Yes. Right. Okay. I think we're through with your time. I'm over by three minutes. Right. Good morning, Your Honors. Deputy Attorney General Joseph Lee, on behalf of Respondent Apelli. I'd just like to start out by pointing out that judicial review of an ineffective assistance of counsel claim is highly deferential and, in fact, doubly deferential when conducted through the lens of Federal habeas. And viewed in light of this deferential standard, it was certainly reasonable for the State to excuse me, the State court to conclude that trial counsel's closing argument was reasonable in light of the fact that Appellant himself. Is that what the State court concluded, that it was reasonable, not a prejudice question and not a chronic question? I believe that's correct. The State court concluded that. That seems like the hardest place to go, doesn't it? I mean, that seems – I'm kind of – well, okay. What about United States v. Swanson? Could you tell us why that's not just positive here? Yes, Your Honor. Swanson is a case where the chronic presumption of prejudice was applied. But that situation is very different from the situation here. Swanson is a case where the defendant did not testify and did not admit essentially all of the elements of the offense. Well, he didn't admit all of the elements of the offense. That he certainly didn't do. Are you talking about the prosecutor? In our case, in this case. In this case, as Your Honor pointed out. He pointed out all the elements of a crime, but not of both crimes. That's correct. And it mattered, right? It really mattered because ultimately what's really at stake here is a three-strikes problem. And the likelihood of getting the petty theft dismissed is a lot greater than the likelihood of getting the robbery dismissed, one. Two, the likelihood of making an Eighth Amendment challenge with the petty theft, as weak as it may be, is still a lot better than with the robbery, which points to zero. So it mattered. That's correct. And unfortunately, Petitioner got on the stand and testified and admitted to the theft. Right. Not to the robbery. That's correct. He admitted to essentially. All right. So now tell me why Swanson's different. Petitioner admitted to essentially all of the elements of the robbery, except the force of fear element. Exactly. And therefore, during closing argument, trial counsel argued the force of fear element wasn't met.  So now tell me why Swanson's different. In this respect, it isn't different. In both instances, there's a factual dispute which could have been discussed but was essentially conceded. Well, there is a difference in Swanson as well, because in this case, trial counsel argued for jury nullification. In Swanson ---- But basically what happened in Swanson, too. That was the whole discussion. They even said it was. Well, in Swanson, the trial counsel didn't argue for jury nullification. And in fact, he told the jurors if they found Swanson guilty, they shouldn't ever look back and agonize regarding what they had ---- that they had done the right thing. This is a totally different situation here. Trial counsel was doing the best he could based on the circumstances, the circumstance being that appellant had admitted to committing the theft and admitted every element except possibly the force element of the robbery. And therefore, during his closing argument, trial counsel argued that the force element of the robbery had not been met. And those are the passages that were cited in the appellee's brief. But if you think that the manager didn't lie, then obviously they were met. I mean, he said specifically Ms. whatever her name was did not lie. If she did not lie, then she was smacked in the face by this guy in the course of taking the material. So how is that not a concession? Well, it is a concession. But that concession has to be viewed in the context of his argument for jury nullification. Okay. But you are saying he did concede guilt. He asked for jury nullification. Yes. He conceded that the State proved beyond a reasonable doubt all of the elements of the crime. When he said, for instance, they've got to prove him guilty beyond a reasonable doubt. Remember, I said that at first. Well, they didn't. They didn't. They didn't. They didn't do that. We all did it because he got up there and he testified. And by gosh, we've satisfied everything necessary for the prosecution to prove us guilty. He did make those statements. He did also say technically this man is guilty of a robbery. Oh, he said it several times.  Guilty of a robbery. And those, those. And then Ted Kaczynski said he made his case on jury nullification. That's correct. Not only on jury nullification, but on arguing that the force element had not been met. Well, how can you say he argued that? At least two times, you agree. He said he's guilty of a robbery. That's correct. Made in the context of the jury nullification argument and in saying that technically this man was guilty of a robbery and that all is not always what it seems. So those, those concessions have to be viewed in light of the fact that counsel Do you read Florida v. Nixon as modifying chronic? Your Honor, to be honest, I'm not familiar with Florida v. Nixon. What about? I don't believe this is a chronic situation. There was adversarial testing here. Supreme Court case just a couple months ago. That was the case of Florida where the lawyer conceded guilt. And the Supreme Court said that's perfectly fine. It was a death case. And actually. I'm not familiar with it. Well, actually, there is. The Court spoke more broadly. I mean, it might have been limited to death cases, but actually the Court spoke more broadly. I don't know if you have something to say about it. If you don't, you don't. And actually, a panel of this Court held in Anderson v. Calderon, which I believe was another death case, which was in fact cited by appellants, that a combined diminished capacity slash jury nullification argument at the penalty phase was, quote, not demonstrably worse than an argument centered on diminished capacity and complete acquittal. And that is essentially the same type of combination argument that trial counsel made here. Well, there are lots of death cases where clearly the only hope is to, on the sentence rather than on the guilt phase. And you treat that as the most important thing is to defeat the capital sentence. And it may be tactically better to not contest the guilt, but there's no tactical reason to not contest guilt in a case that's not capital, because that's the end of it when you're guilty. But he did contest guilt. He did argue that the force element had not been met. That's an interesting question. He certainly, as you say, on several occasions admitted guilt and told the jury that the case was proved beyond a reasonable doubt. That's correct. In the context of jury nullification and based on appellant's own testimony that he stole the milk, he admitted to stealing the milk, and that he had done so in order to feed his child. Trial counsel did, based on that testimony, request an instruction, a jury instruction on necessity, which the trial court denied. So basically what trial counsel was left with, based on appellant's own testimony, was to argue that the force or fear element had not been met, and then to argue that if the jury's ---- It certainly didn't do by conceding that the woman who said she was hit wasn't lying. Well, as Judge Kaczynski pointed out, I think that was also in the context of jury nullification, made an attempt to basically just be straight up and credible with the jury. Okay. Let me ask you something. What about if we looked at this through a Strickland prism and assumed for the moment that we thought that there was an effect of assistance in the way that this was handled in the concessions and so on, which weren't necessary to the jury nullification? Let's just assume that. What about prejudice? I don't believe there is prejudice for a couple of reasons. The first being that the evidence established it's a robbery by fear, based on the victim's testimony and the store employee's testimony. Well, if you believe them and you don't believe him, that's the question. What he didn't do was make any argument about why you should believe him rather than them. Well, he did argue that the force element was not met, and I do believe he made a brief argument about that. He didn't argue that the force element was not met either, which was cited in our brief. The other reason why there's no prejudice is because Petitioner conceded guilt on the petty theft charge, and that suggests him to the same sentence under the three-strikes law that he's facing here. It doesn't require the same sentence. The judge could have, as Judge Bergeron said, struck priors in the petty – if it had only been a petty theft conviction. And then there's a greater legal problem also, whether it's cruel and unusual punishment. At least it's an argument. But certainly you don't have to treat petty theft identically to robbery in California. That's up to the judge. That's true. But in this case, at sentencing, trial counsel did make a motion pursuant to California Penal Code Section 1385 to have the prior conviction struck. But, yes, but you had a robbery conviction. We don't know what would have happened if you'd only had a petty theft conviction. You had a petty theft conviction along with two prior robbery convictions. And another thing that I do want to point out in the context of that jury nullification argument, which was based on Appellant's testimony – The question is, had the jury acquitted him of robbery and convicted him only of petty theft, would the jury have struck the pious? Would there have been? Wouldn't there have been? I'm not sure. Well, we don't know. That would be a question for the judge to decide based on his prior record and his criminal history. Well, we could hope that the judge would not have sent him to jail for 30 years to life if it had been a petty theft of baby formula. And we have to assume it's a reasonable justice system in the State of California. Was there an evidentiary hearing in this case on the ineffectiveness question? No, there was not, Your Honor. So we don't know. I mean, it's possible the child lawyer might have known something about this judge, such as he doesn't dismiss priors no matter what. But we have no record of that. No, we don't. But that was something that I was going to try and point out, and that is that trial counsel did make this jury nullification argument based on appellant's testimony that he stole this baby formula in order to feed his child. Then later at sentencing, he made that same argument in the context of arguing that the trial court should strike his prior convictions, because look at this man. He was trying to feed his child. And so I do think that there was somewhat of a tactical reason for his argument based on appellant's testimony, because he did use that at sentencing. I'm sorry. Why could you not make a jury nullification argument and give the jury some basis for not violating their oath? Instead of saying to the jury, the case has proved beyond a reasonable doubt. Now go out and violate your oath. Why couldn't you say to a jury, there's a reasonable doubt in this case. You can find one if you want. You've got a conflict in the testimony. There's a reasonable doubt. Now what you really ought to do is do justice. Why wouldn't you do both? What possible justification is there for telling a jury you have to act in a lawless manner and that's the only option you have? Well, two things. As I mentioned earlier, I think those concessions were made in the sense that he was saying, well, technically this man is guilty of robbery, but you should nullify it. Right. So in other words, he's telling them to nullify instead of saying, which doesn't seem all that difficult, he said A and they said B, and it all comes down to who you believe. And the government, there's no particular reason to believe them over him, but anyway, you should go out there and do justice. What was the downside of that? Well, I think we're kind of getting into ---- And we don't know because we've had no hearing about it. Well, I think we're getting into what we think or in hindsight trial counsel could have done. The question under Strickland is we look at what he did and assess whether it's reasonable. And I think we might have ---- It's pretty unusual for a trial counsel to get up and admit his lawyer's guilt and have a good reason for it. I mean, he might have had one, but we haven't heard it. It's unusual, but it does happen. And under these specific circumstances where Petitioner chose to testify and to admit the theft and basically all of the elements of robbery except one ---- Except the only one that mattered. In other words, as between robbery and petty theft, this is the only one that mattered. That's correct. And that's why trial counsel argued that the fourth element of robbery hadn't been met. And his alternative argument was, well, the evidence does appear to be strong. We weren't there, so obviously we couldn't observe the witness's demeanor and the credibility.  He didn't say the evidence appears to be strong. He said we proved it beyond a reasonable doubt. And he didn't say we can't judge the credibility. He said I personally believe her. Correct. Made in the context, once again, of jury nullification. And he said, well ---- It would be good to argue a different case. Let's argue this one. All right? As to what he actually said. Maybe some other day. We're over by 50 percent already. Thank you, Your Honor. Okay. Thank you. I would just like to point out that under, I believe, California Penal Code section 17, the judge has the power to reduce petty theft with a prior to a misdemeanor. And I don't know if, and I think that they just moved it to dismiss it, the furtherance of justice under 1385. But I don't believe there was a motion to reduce it from a, to leave the conviction, but just reduce it from a felony to a misdemeanor. At this point, it no longer mattered. But it would have mattered if the robbery had not been found. There would have been an alternative of not dismissing the conviction, but of reducing it to a misdemeanor, and then the three strikes law would not apply. Thank you. Counsel, can you tell me one other question? It appears this case sat in the district court for three years between the magistrate's report and the district judge's signing of the order. Do you know? Well, I don't know why. I just received my appointment recently, fairly recently. My impression is it might have had to do with the three strikes cases in the Supreme Court. They might have been waiting, yes. I submit, Your Honor. Thank you, counsel. The case is arguably submitted. The court will adjourn.
judges: Reinhardt, Kozinski, Berzon